UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. A-11-CR-259-01-LY |
| | § | |
| JOSE RAMIRO VICHARELLY, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**GOVERNMENT'S RESPONSE TO
DEFENDANT JOSE RAMIRO VICHARELLY'S
MOTION FOR SEVERANCE**

This is the response of the United States to Defendant Jose Ramiro VICHARELLY's Motion for Severance filed on July 27, 2011 [Doc. #93].

### I. Background

Defendant Jose Ramiro Vicharelly (Defendant) was the Owner, President, and Executive Director of Texas Staffing Resources (TSR); all of his co-defendants in this case were, at one time or another, his fellow directors, officers and/or employees. The fraudulent scheme of Defendant and his associates as TSR is best summarized as follows:

> Although TSR held itself out to be legitimate visa processing firm, its entire business was dedicated to obtaining H-2B visas for aliens already illegally present in the United States. TSR made money in two ways. First, it helped companies make their undocumented workers appear "legal" by obtaining H-2B visas for them through fraudulent visa petitions. Second, when filing the visa petitions, TSR would request more visas than needed or asked for by the companies, and once these petitions were approved, TSR would sell the excessive "spaces" or "spots" to undocumented aliens without any connection the petitioning company (and who had no intention of working at that company). In order to conceal the true nature of the visa petitions, as well as hide from the companies the fact TSR had requested additional visas in their name, associates at TSR would forge signatures and submit fraudulent documents with the applications, such as fake letters and bogus charts and

graphs representing the companies' finances.

After the petitions were approved and initial "deposits" were made for the visas, associates at TSR would instruct the undocumented workers to travel to Mexico in order to be interviewed at a U.S. Consulate. Prior to these interviews, associates at TSR would meet with the aliens at hotels where they would collect final payments and coach the aliens on what to say (or not to say) during their interviews, such as to deny they had ever lived in the United States and to deny they had paid TSR for their visas. Associates at TSR would also prepare the aliens' Non-immigrant Visa Applications ("Form DS-156") and knowingly fill it out with materially false information, such as by answering "no" to the question whether they (the aliens) had ever been illegally present in the United States. Finally, associates at TSR, as agents for the petitioning companies, would receive the approved H-2B visas from the Consulates and distribute them to the aliens, who, in turn, used them to enter, work, and reside in the United States under the auspices of having lawful status.[1]

The Government will prove the above scheme at trial through the testimony of local employers, numerous beneficiaries of fraudulent visas, and at least three cooperating co-defendants, as well as through tangible evidence, such certified copies of visa petitions; documents recovered from TSR's office and the defendants' homes; and an audio recording of the defendant wherein he describes TSR's scheme to a cooperating witness. All together, the evidence will show that the defendant was personally involved in every facet of TSR's seven-year long fraud, from soliciting business on behalf of TSR, to preparing the fraudulent petitions, to instructing the aliens to return to Mexico and coaching them before their interviews.

## II. Law

Generally, defendants jointly indicted should be tried together. *United States v. Chagra*, 754 F.2d 1186, 1188 (5th Cir.) *cert. denied*, 474 U.S. 922 (1985); *United States v. Webster*, 734 F.2d 1048, 1052 (5th Cir.), *cert. denied*, 469 U.S. 1073 (1984). This is especially true in conspiracy cases. *United States v. Erwin*, 793 F.2d 656, 665-66 (5th Cir. 1986). "Joint trials play an important

---

[1] This summary is taken from the factual bases contained in the filed plea agreements of co-defendants Faulk, Gonzalez, Ocampo, and Morales.

role in the criminal justice system . . . [and] generally serve the interest of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability - advantages which sometimes operate to the defendant's benefit."  *Richardson v. Marsh*, 481 U.S. 200, 209 (1987).  Thus, severance "is justified only if the prejudice flowing from a joint trial is clearly beyond the curative powers of a cautionary instruction."  *United States v. Becker*, 569 F.2d 951, 964 (5th Cir.), *cert. denied*, 439 U.S. 865 (1978).

> In evaluating a severance motion, the
>
>> trial judge is required to weigh the prejudice inherent in a joint trial in light of the realities of judicial economy and to sever defendants as the needs of justice dictate. . . the denial of a motion to sever is reversible only for abuse of discretion. . . [the] burden of showing prejudice is onerous, the general test is: "whether under all the circumstances of a particular case, as a practical matter, it is within the capacity of the jurors to follow the court's admonitory instructions and to accordingly collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements, and conduct.  In sum, can the jury keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict as to him?  If so, though the task be difficult, severance should not be granted."

*United States v. Martino*, 648 F.2d 367, 385 (5th Cir.), *cert. denied*, 456 U.S. 943 (1981) (quoting *Peterson v. United States*, 344 F.2d 419, 422 (5th Cir. 1965)).

Furthermore, the fact that one or more defendants may stand adverse to each other is not a proper ground for severance, nor is a mere showing of some antagonism and prejudice.  *Eq. United States v. Stotts*, 792 F.2d 1318, 1322 (5th Cir. 1986) (more culpable co-defendant not sufficient); *United States v. Berkowitz*, 662 F.2d 1127, 1133 (5th Cir. 1981) (antagonism not sufficient); *United States v. Crawford*, 581 F.2d 489, 491 (5th Cir. 1978) (severance not mandated every time co-defendants present inconsistent defenses).  Rather, it is the defendant's burden to establish "the defenses [are] antagonistic to the point of being irreconcilable and mutually exclusive."  *Webster*,

734 F.2d at 1053.  In other words, "[t]he defenses must be so antagonistic that the jury, in order to believe the defense of one defendant, must necessarily disbelieve the other defendant's defenses." *Id*.

### III. Analysis

As an initial matter, the Government notes that four of the six defendants have filed written plea agreements with the Court.  Therefore, the sole issue to be determined is whether the defenses of the defendant and his wife, Irma Lopez Vicharelly, will be irreconcilable and mutually exclusive.  Defendant, however, makes no such showing and instead only puts forth now-moot speculation about what might have happened had all co-defendants proceeded to trial.

The Government nonetheless submits to the Court that its case against the defendant and his wife is, in fact, exactly the type that should be tried at one time.  They are the only defendants charged in every count of the indictment, and it is expected that most, if not all, of the factual witnesses will testify that she usually accompanied him when he conducted business on behalf of TSR.[2]  The Government will also seek to introduce various documents bearing their names and signatures which were submitted in furtherance of various fraudulent H-2B visa petitions.[3]  Therefore, because it cannot seriously be disputed that Defendant and his wife processed H-2B visa petitions, or assisted in the processing of H-2B visa petitions, the only viable defense available to either of them would be that they did not know their actions were illegal.  This, however, is not irreconcilable or mutually exclusive – indeed, it is the exact opposite.

---

[2] *See, e.g.*, ICE Investigative Report No. 015 (statement of Tina Terrell, manager of Hilton Garden Inn, that Defendant and his wife came to her hotel to talk to her workers about getting work visas); ICE Investigative Report No. 019 (statement of Carmen Hernandez-Tepixtle, beneficiary of four visas through TSR, that Defendant and his wife worked together in Mexico in preparing the aliens for their interviews) (both reports attached as Government's Exhibit 1).

[3] *See, e.g.*, Form I-129 filed on behalf of LCT Lego Custom Texture (attached as Government's Exhibit 2); Form DS-156 submitted on behalf of visa beneficiary Julio Cesar Bernardez Martinez (attached as Government's Exhibit 3).

As for his wife's statement to ICE agents on May 10, 2011, the Government is fully aware of the holding in *Bruton v. United States*, 88 S.Ct. 1620 (1968).  The Government is also aware, as is the defendant, that "[a] codefendant's confession is admissible in a joint trial if references to the other codefendants are deleted."  *United States v. Gray*, 462 F.2d 164, 165 (5th Cir.) (citations omitted), *cert. denied*, 409 U.S. 1009 (1972).  With that in mind, Mrs. Vicharelly's statement is attached for the Court and it shows how simple it would be to take out all mention of him.  In fact, the only portion of her statement wherein she implicated her husband is reflected in the fourth paragraph of page 3:

> Jose VICHARELLY told her what she was supposed to do.  She admitted that she went to businesses with VICHARELLY to talk to the owners and that VICHARELLY explained to the business owners how the visas process works and how the payments are made.  VICHARELLY told them to pay a certain amount for each person that the businesses wanted to bring in.  VICHARELLY have the business owners the paperwork for the process.

*See* ICE Investigative Report No. 040 (statement of Irma Lopez Vicharelly) (attached as Government's Exhibit 4).  The Government, however, has no intention of eliciting any evidence regarding this portion of the statement, and as a result, the admission of the remaining parts would not pose a problem under *Bruton*.[4]

For all these reasons, Defendant's motion should be denied.

                                                Respectfully submitted,

                                                JOHN E. MURPHY
                                                UNITED STATES ATTORNEY

By:   /s/ GARTH R. BACKE
        GARTH R. BACKE
        Assistant U. S. Attorney

---

[4] The Government also does not intend to elicit any evidence regarding the statement provided by co-defendant Pedro Saul Ocampo-Munguia to ICE agents on May 10, 2011.

816 Congress Avenue, Suite 1000
Austin, Texas   78701
Office  (512) 916-5858
Fax (512) 916 5854
LA State Bar. No.  29570

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 8, 2011, a true and correct copy of the foregoing instrument was electronically filed with the Clerk of the Court, using the CM/ECF System which will transmit notification of such filing to the following CM/ECF participant:

Albert A. Flores
The Law Office of Albert A. Flores
3817 San Pedro
San Antonio, TX 78212
(210) 225-4006
(210) 225-5621 (fax)
attyflores@aol.com

    /s/ GARTH R. BACKE
    GARTH BACKE
    Assistant United States Attorney